UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CYNTHIA D. MARBURY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Cause No. 1:22-CV-034-PPS-SLC |

## **OPINION AND ORDER**

Cynthia Marbury has appealed the denial of her application for Social Security disability benefits and Supplemental Security Income, and in so doing, she claims that the ALJ committed three errors which require a reversal of her decision. [DE 15 at 8–25.] I will limit my discussion to one: whether the ALJ erred in her formulation of Marbury's residual functional capacity, which accounted for the use of a cane to ambulate, but which failed to specify whether Marbury must use the cane with her dominant or non-dominant upper extremity. [*See* AR 22, 30, 65–73.][1] According to the vocational expert who testified at Marbury's hearing, this dominant versus non-dominant hand distinction makes a world of difference in whether Marbury can perform light work. Because I find that the ALJ erred in determining the RFC, I will reverse the ALJ's decision and remand on this ground.

---

[1] The administrative record [AR] is found in the court record at docket entry 9 and consists of 1439 pages. [DE 9.] I will cite to its pages according to the Social Security Administration's Bates stamp numbers in the bottom right-hand corner of each page, rather than the court's Electronic Case Filing page number.

## Background

Cynthia Marbury applied for disability insurance benefits in April 2018. [AR 310–22.] She reported that she stopped working on February 5, 2018. [AR 400.] Her claims were denied initially and again upon reconsideration. After that, she requested and had a hearing before an Administrative Law Judge via telephone due to concerns over COVID-19. A few weeks later, the ALJ issued her written decision denying benefits. [AR 140–61.] The Appeals Council granted Marbury's request for review because the recording from the telephonic hearing was inaudible [AR 163], and the ALJ held another hearing in April 2021. On August 3, 2021, the ALJ entered a second order again finding Marbury was not disabled under the Social Security Act. [AR 13–28.] After losing her administrative appeals [AR 1–6, 151–54, 302–12], she brought the matter here.

In the written decision, the ALJ went through the required five-step sequential evaluation process codified in 20 C.F.R. § 404.1520. At step one, she determined that Marbury had not engaged in substantial gainful activity since November 17, 2017, the alleged onset date of her disability. [AR 19.] The ALJ then determined that Marbury has the severe impairments of degenerative disc disease of the lumbar spine, obesity, post-traumatic stress disorder, and major depressive disorder. *Id.* Specifically, she concluded that Marbury's impairments did not meet or equal an impairment listed in the SSA regulations. [AR 19–22.]

At the next step, the ALJ determined Marbury's residual functional capacity. She determined that Marbury is capable of performing work at the light exertional level, as

defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with several exceptions: "she can stand and/or walk for up to four hours, and can[] sit for up to six hours in an eight-hour workday," she "can occasionally climb stairs and ramps, balance, kneel, crawl, stoop, and crouch," she "can never climb ladders, ropes, or scaffolds," she "must avoid concentrated exposure to wetness, ambulating on uneven surfaces, and vibration," she "must avoid all exposure to moving machinery and unprotected heights," she "*needs a cane to ambulate more than 50 feet*," she must "work with an option to change positions no more frequently than every 30 minutes while remaining on task," she "can perform work that can be learned in 30 days or less, with simple routine tasks," she "is able to remain on task in two-hour increments, and "she can have occasionally interaction with coworkers, supervisors, and the general public." [AR 22–29 (emphasis added).]

For present purposes, I won't repeat the ALJ's detailed description of the medical evidence included in her written decision. *See id.* It's enough to point out that in her evaluation of the relevant medical evidence, the ALJ repeatedly observed that Marbury's back problems stem from injuries to the left side of her body; and the ALJ specifically acknowledged Marbury's testimony that she uses a cane on her left side, which she confirmed at the hearing was Marbury's dominant upper extremity. [AR 23–25, 27; *see also* AR 53 (noting records that Marbury is "left-handed," which Marbury confirmed), 59 (testifying that she uses a cane "any time [she] go[es] out").] More on that in a minute.

3

The ALJ then posed the RFC and some additional hypothetical questions to a vocational expert, who testified that a hypothetical individual with Marbury's RFC would be able to perform a couple of unskilled jobs at the light exertional level that exist in significant numbers in the national economy. [AR 66–67.] The RFC the ALJ posed to the vocational expert did not specify whether Marbury must use a cane with her dominant or non-dominant upper extremity. The vocational expert later clarified, in response to questioning from Marbury's counsel, that "if the individual needed to use a cane with their dominant hand," the individual could "still perform sedentary work, but it would eliminate the ability to perform light work." [AR 70–71.] The expert also acknowledged that use of a cane for these types of jobs would be "an accommodation," and that these types of positions "allow for momentary interruptions in the workplace, but they typically do not have work blocks or periods of time where they would be non-productive." [DE 72.] After the hearing concluded, Marbury submitted an opinion from another vocational expert, who opined that her use of a cane was an accommodation and not consistent with competitive employment. [AR 538–41.]

The ALJ credited the testimony of the SSA's vocational expert that a hypothetical individual with Marbury's RFC could perform the requirements of representative unskilled occupations at the light exertional level. But the ALJ made no mention of the expert's testimony concerning the use of a cane being considered an accommodation for such work, or his testimony indicating that limiting the RFC to use of a cane with Marbury's dominant (left) hand would preclude her from performing work at the light

4

exertional level. The ALJ also made quick work of the vocational expert evidence submitted by Marbury, noting that the expert did not have a chance to hear any testimony in the case and thus "appears to address his letter based on some unknown information," and the expert's opinion was not "obtained under oath or affirmation," unlike the SSA expert's testimony. While the ALJ "reviewed" this information, for these reasons she declined to credit it. [AR 31.]

In sum, in light of her evaluation of the vocational expert testimony, the ALJ determined jobs exist in significant numbers in the national economy that Marbury can perform, given her age, education, work experience, and RFC, and therefore she is not disabled under the Social Security Act. *Id.*

## Discussion

I'll start, as is customary, with the standards that govern my decision-making in this appeal. In a Social Security disability appeal, my role as district court judge is limited. My job is not to determine from scratch whether Marbury is disabled. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). If substantial evidence supports the ALJ's factual findings, they are conclusive. 42 U.S.C. §405(g); *Shideler*, 688 F.3d at 310. The Supreme Court has said that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S.

389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Given this modest standard, the review is a light one. But, of course, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Finally, my review is also guided by the principle that while "[t]he ALJ is not required to address every piece of evidence or testimony presented," she "must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Marbury asserts that the ALJ made several errors in her evaluation of subjective symptom reports and medical opinion evidence, determination of her RFC, and her treatment of vocational expert evidence, resulting in an improper denial of benefits. I will focus on what appears to be the most obvious concern—that the ALJ failed to properly consider evidence that Marbury uses a cane with her dominant upper extremity and incorporate that limitation into her RFC, which in turn resulted in a flawed hypothetical to the vocational expert that overstated Marbury's RFC to perform unskilled work at the light exertional level. [*See* DE 15 at 10–12.]

Social Security Ruling 96-8p proscribes an ALJ's duties in assessing a residual functional capacity:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g.,

6

> laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . . The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.

SSR 96-8p, 1996 SSR LEXIS 5, at *20 (July 2, 1996) ("Narrative Discussion Requirements"). An omission of this discussion is enough to warrant reversal of the ALJ's decision. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). In addition, an ALJ may not point to evidence that supports her conclusion while ignoring evidence to the contrary. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

The record in this case is replete with evidence that Marbury uses her left hand as her dominant upper extremity and requires a cane to ambulate. [*See* AR 53, 59–61, 440, 613, 703, 741, 783, 880, 889, 993, 1055, 1064, 1120, 1128, 1130, 1191, 1247, 1254, 1257, 1261, 1366.] Medical reports reflect she has lower motor strength on her left side stemming from diagnosed ailments of the lumbar spine. [AR 1120, 1128, 1130.] An examination conducted September 22, 2018, by consultive examiner Dr. John Mericle, indicates that Marbury's "chief problem is the injury to her low back which now involves her left foot and ankle that happened last Feb[ruary] 2018. She is unable to stand normally because of this and cannot work." [AR 754.] The same report states, under "Physical Movements and Muscluloskeletal Analysis," that Marbury arrived to the exam with a cane, which she

7

had used "since accident last Feb[ruary]," and that in the physician's opinion, Marbury was "unable" to walk on her heels and her cane was "medically necessary." [AR 750.] She could maintain "good balance while ambulating," provided she used the assistive device. *Id.* Finally, Dr. Mericle opined that Marbury would be unable to stand/walk for at least two hours in an eight hour day. [AR 751.] In some of the medical records, Marbury was noted using the cane with her right upper extremity [*see, e.g.*, AR 773, 775, 1219, 1225, 1237], but other evidence, including testimony credited in the ALJ's decision, shows that she used the cane with her left upper extremity [*see, e.g.*, AR 613, 741, 783, 1247, 1253; *see also* AR 53, 59].

There is substantial evidence in the record from which one could conclude that Marbury is limited to using a cane to ambulate for any sustained period of time and that she typically leans on her cane with her dominant (left) hand to get around, to the extent she is able. What's notably absent from the RFC determination ultimately presented to the vocational expert is any mention of Marbury's limitation to using a cane with her dominant upper extremity. In this case, the ALJ erred in failing to properly address, as part of her determination of Marbury's RFC, whether Marbury requires the use of a cane with her dominant or non-dominant upper extremity in light of all the relevant evidence. As reflected in the expert's testimony, this is a critical issue: such a limitation of Marbury's RFC would preclude her from performing the exact type of work the ALJ determined she could perform, resulting in denial of benefits. [AR 70–71.] But it is not adequately spelled out in the ALJ's decision.

The government does not meaningfully dispute that the ALJ's RFC determination failed to account for this apparent limitation. Instead, the government argues that while the ALJ's findings acknowledged evidence that Marbury uses a cane and has diminished strength and pain on her left side, sufficient evidence existed to restrict the RFC to omit a limitation based on her use of a cane with her dominant upper extremity. [DE 18 at 7–8.] Upon independently reviewing the record evidence, including the report from the SSA's consultive examiner, I'm not convinced that's the case. In any event, to the extent the ALJ specifically concluded that a further limitation of Marbury's RFC based on her use of a cane "with her dominant upper extremity" was unjustified based on the evidence in the record, that is not at all apparent on the face of her decision. Accordingly, I find the RFC determination fails to build an "accurate an logical bridge" between the evidence and the conclusion that further limitation of Marbury's RFC was not justified. *See Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

Because I find the ALJ erred in her evaluation of Marbury's RFC for the foregoing reasons, I decline to pass on the balance of Marbury's arguments on appeal. She can raise these concerns with the ALJ directly on remand.

**ACCORDINGLY:**

For the foregoing reasons, the decision of the ALJ denying Marbury's application for Social Security disability benefits and Supplemental Security Income is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED**.

ENTERED: March 15, 2023

      /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT